**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wesley E. HIXON, Defendant–Appellant.**

**No. 92–5220.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1992.

Decided March 11, 1993.

---

2. Certain patients may require more aides based on the patients' physical and mental infirmities.

Gary Humble, Asst. U.S. Atty. (argued and briefed), Jerry G. Cunningham, U.S. Atty., Office of the U.S. Atty., Chattanooga, TN, for plaintiff-appellee.

William H. Ortwein (argued and briefed), Ortwein & Tidwell, Chattanooga, TN, for defendant-appellant.

Before: KENNEDY and BATCHELDER, Circuit Judges; and ENGEL, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendant Wesley E. Hixon appeals his jury conviction and sentence for making a false and material statement and representation on claims he submitted for continuing disability compensation. Defendant contends on appeal that the District Court erred in refusing to dismiss the indictment because it was duplicitous; that the defendant is not guilty as a matter of law; that the District Court erred in its instruction to the jury; and that the District Court erred in determining defendant's sentence. Finding the evidence insufficient to support the conviction, we reverse.

I.

In 1974, the defendant began working for the Tennessee Valley Authority (TVA). On February 21, 1989, in an accident occurring during the performance of his assigned duties, defendant sustained a strained right knee. As a result of this injury, defendant underwent four surgical procedures. He claimed he was unable to work because his job required him to walk

on rough terrain. Between the time defendant was injured and the time he returned to work in October of 1990, defendant was considered partially or totally disabled.

On July 12, 1989, defendant submitted a Form CA–8 to the TVA which was then forwarded to the Department of Labor (DOL), Office of Workers' Compensation Programs (OWCP). The CA–8 is a form completed by a federal employee informing the OWCP that he has lost pay as a result of a work-related injury and is claiming compensation benefits. This form is used for short-term disabilities and covered the period July 1 through July 15, 1989. Defendant submitted an additional CA–8 form, dated July 28, 1989, claiming compensation as a result of pay loss from July 16 through July 31, 1989. To determine the amount of compensation that should be paid (or if compensation should be paid at all), the CA–8 form requires the applicant to list any salaried or self-employment he has engaged in during the period for which disability compensation is sought.[1] On both forms, the defendant wrote that this information was "not applicable."

Thereafter, it was determined that defendant was entitled to regular benefits which he received every four weeks. In connection with these benefits, the DOL sent the defendant a Form CA–1032. The cover letter accompanying this form explains that the purpose of the form is to obtain information to be used to determine the claimant's qualifications for continued benefits "or to determine whether an adjustment in benefits may be warranted." To achieve this purpose, the form contains the following questions:

Part A. Employment History

1. *Employment other than Self–Employment.* Under this heading, you must report all employment, other then self-employment, for which you received salary, wages, sales commissions, piecework, or other payment. . . .

a) Were you employed by an employer during the time period covered by this form?

. . . .

2. *Self–Employment.* Earnings from self-employment (such as farming, sales, service, operating a store, business, etc.) must be reported. Report any such enterprise in which you worked, and from which you received revenue, even if it operated at a loss or if profits were reinvested. You must show as "rate of pay" what it would have cost you to have hired someone to perform the work you did.

a) Were you self-employed during any time covered by this form?

Defendant filled out two of these forms, one dated November 15, 1989 and the other dated April 27, 1990. On these two forms, defendant answered "No" to both questions.

In March of 1991, the TVA Office of Inspector General, fraud division, received three phone calls regarding defendant. Thereafter, an agent, Duane Broome, began an investigation to determine whether defendant was misusing or abusing the worker's compensation program. In March, Agent Broome saw the defendant, with several of his associates, working a booth at the Dixie Deer Classic, an outdoor show where booking or travel agents display their wares in an effort to persuade potential customers to use their services. TVA agents observed the defendant carrying and setting up a portable booth with various stuffed animal heads used for wall mounts. They also saw him carrying his work table, supplies, brochures, and paraphernalia to promote his business. Subsequent investigation of defendant's business records revealed that defendant had worked numerous other shows and took several (business and) hunting trips for Woods and Water Outdoor Consultants while on disability.

Agent Broome discovered that Woods and Water Outdoor Consultants was a

---

1. Specifically, question 9 of the form reads:
    a. Salaried Employment.

b. Commission and Self–Employment. Show all activities, whether or not income resulted from your efforts.

Georgia (Subchapter S) corporation that provided, planned, and booked fishing, hunting and outdoor vacations. Defendant was the sole stockholder (100% owner) of the corporation, as well as the President, Treasurer, registered agent, and sole member of the Board of Directors. Defendant did not receive a salary from the corporation, but allegedly earned income on commissions received from those who utilized his "travel agent type" services.[2]

In August, 1991, Agents Broome and Derryberry went to defendant's home to interview him. In front of the house was a large red trailer bearing the name "Woods and Water Outdoor Consultants." Defendant explained to the agents that Woods and Water was a business he had started six years previously. However, defendant initially told the agents the company was his wife's business, that she attended all the shows, and that his personal involvement was nothing more than staying home and answering the phone and taking one business related trip in a year's time.

Agent Broome then confronted defendant with the information he had gathered during the course of his investigation, e.g., he had read the company brochures and paperwork and the wife's name appeared nowhere; he had attended and videotaped several shows, but never saw the defendant's wife. According to Agent Broome's testimony, defendant "looked at me with a blank stare, looked back out the window and looked back at me and he said you got me." Defendant then told the agents "I've been employed since day one." Finally, defendant broke down, cried, and asked what he had to do to get this behind him as quickly as possible. On August 30, 1991, defendant's employment at TVA was terminated due to his failure to report his activities to OWCP.

On October 10, 1991, a superseding indictment was filed charging defendant with four (4) counts of knowingly and willfully making a false material statement and representation and knowingly and willfully concealing by scheme, trick, and device a material fact; "that is, the defendant submitted 'Claims for Continuing Compensation on Account of Disability' and annual disclosure statements falsely indicating that he was not self-employed and concealing his self-employment and ownership of Woods and Water Outdoor Consultants, Inc.," in violation of 18 U.S.C. § 1001.[3] On November 6, 1991, the jury found defendant guilty on all four counts. Defendant was sentenced to a term of ten (10) months incarceration on each count, to be served concurrently, and was ordered to make restitution of $20,089.64. This appeal followed.

## II.

◼ The defendant argues that the District Court erred in failing to dismiss the indictment pursuant to Federal Rule of

---

**2.** According to the presentence report, the company's revenue came from commissions it was paid by the guides and outfitters with whom vacations and hunting expeditions were booked. According to the corporation's income tax returns, in 1990 the company had gross receipts of $39,366 and showed a loss of $9,086; in 1989 it had gross receipts of $21,331 and showed a loss of $12,837; and, in 1988, the corporation had gross receipts of $22,510 and showed a loss of $19,460.

**3.** The Superseding Indictment read as follows:
THE GRAND JURY CHARGES THAT:
    On or about the following dates, in the Eastern District of Tennessee and elsewhere, in a matter within the jurisdiction of the United States Department of Labor, the defendant, WESLEY EDWARD HIXON, did knowingly and willfully make a false material statement and representation and knowingly and will-

fully conceal by scheme, trick, and device a material fact; that is, the defendant submitted "Claim[s] for Continuing Compensation on Account of Disability" and annual disclosure statements falsely indicating that he was not self-employed and concealing his self-employment and ownership of Woods and Water Outdoor Consultants, Inc.;

| COUNT | DATE | FORM |
|---|---|---|
| 1 | July 12, 1989 | "Claim For Continuing Compensation" |
| 2 | July 28, 1989 | "Claim For Continuing Compensation" |
| 3 | Nov. 15, 1989 | Annual Disclosure Statement |
| 4 | April 27, 1989 | Annual Disclosure Statement |

    All in violation of Title 18, United States Code, section 1001.

Criminal Procedure 12(b)(2) for duplicity. A duplicitous indictment charges two or more separate and distinct crimes in a single count. *United States v. Duncan*, 850 F.2d 1104, 1108–09 n. 4 (6th Cir.1988), *appeal after remand*, 881 F.2d 1077, *cert. denied sub. nom.*, 493 U.S. 1025, 110 S.Ct. 732, 107 L.Ed.2d 751 (1990). The indictment in this case charges violations of 18 U.S.C. § 1001, which provides:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Defendant contends that because the indictment charges defendant in the conjunctive and does not follow the exact wording of the statute (*i.e.*, it alleges the defendant made a false statement *and* concealed by scheme, etc., a material fact), the indictment improperly charges two separate offenses in one count and should be dismissed for duplicity.

We agree with the Ninth Circuit "that Congress, in enumerating several different types of fraudulent conduct in Section 1001, did not create separate and distinct offenses." *United States v. Uco Oil Co.*, 546 F.2d 833, 838 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). The court went on to hold that "once it is determined that the statute defines but a single offense, it becomes proper to charge the different means, denounced disjunctively in the statute, conjunctively in each count of the indictment." *Id.* (citing *United States v. Alsop*, 479 F.2d 65, 66 (9th Cir.1973)). The Eleventh Circuit reached a similar result, finding that:

> [w]here a penal statute [such as 18 U.S.C. § 1001] prescribes several alternative ways in which the statute may be violated and each is subject to the same

punishment, however, the indictment may charge any or all of the acts conjunctively, in a single count, as constituting the same offense, and the government may satisfy its burden by proving that the defendant, by committing any one of the acts alleged, violated the statute. [citations omitted] The conjunctive allegations do not render the indictment duplicitous.

*United States v. Burton*, 871 F.2d 1566, 1573 (11th Cir.1989). The District Court did not err in concluding that "an indictment alleging the different kinds of conduct in a single count based on a single document is not duplicitous" (citing *Uco*), and thus did not err in denying defendant's motion to dismiss the indictment.

### III.

Defendant next contends that the District Court erred in denying his motion for judgment of acquittal because he is not guilty as a matter of law. Defendant argues that the only work he performed was for Woods and Water Outdoor Consultants Corporation. He maintains that under Georgia law (and federal law) as a corporate officer he was an employee of the corporation, and as such could not, as a matter of law, be self-employed. Consequently, he did not make a false material statement or representation on his disability claim forms when he answered that he was not self-employed. This statement simply was not false.

The District Court held that whether the defendant was self-employed was a question of fact for the jury to decide. The statute, 18 U.S.C. § 1001, speaks in terms of knowingly and willfully making false material statements and representations, or concealing a material fact. It is clear that the material *fact* alleged by the indictment to have been concealed was defendant's self-employment. He was not indicted for his answer to the questions regarding employment other than self-employment. The District Court instructed the jury that whether the fact of self-employment was material was a question of law for it to decide, but it was for the jury to decide

whether the defendant knowingly and willfully concealed his self-employment status or falsely stated he was not self-employed. The court instructed the jury that if it concluded beyond a reasonable doubt that because of defendant's stock ownership, his position as the corporation's president, and the actions he took on the corporation's behalf, the defendant was, in effect, the corporation, "you may disregard the existence of the corporation in your determination of whether the defendant was self-employed." [4] We now turn to the issue whether there was sufficient evidence for the jury to convict the defendant for falsely stating he was not self-employed.

### IV.

■ A violation of 18 U.S.C. § 1001 for the making of a false statement or representation requires: (1) the making of a statement; (2) the falsity of such statement; (3) knowledge of the falsity of such statement; (4) relevance of such statement to the functioning of a federal department or agency; and (5) that the false statement was material. *United States v. Gahagan*, 881 F.2d 1380, 1382 (6th Cir.1989) (citing *United States v. Aarons*, 718 F.2d 188, 190) (6th Cir.1983)). Thus, a violation of section 1001 requires a determination of whether Hixon's response on his claims for continuing disability that he was not self-employed was a false representation. *Gahagan*, 881 F.2d at 1382.

■ The only evidence of defendant's self-employment was his presidency of Woods and Water, a Georgia Corporation, and his services to that corporation. The Official Code of Georgia Annotated Section 14–2–140(8) reads:

"Employee" includes an officer but not a director. A director may accept duties that make him also an employee.

Defendant's expert witness, an Atlanta lawyer and CPA, testified that, "in my opinion, by definition, an officer of the corporation is an employee of the corpora-

tion." It is undisputed that defendant was an officer of Woods and Water. As such, he was an employee of the corporation. The government has presented no evidence that defendant personally kept any commissions for trips sold (rather than turning them over to the corporation). Admittedly, some persons may refer to themselves as self-employed when they are sole owners of a corporation. That does not make them self-employed. We see no basis for permitting the jury to conclude that defendant was self-employed simply because he owned all the stock in the corporation and was its president. Payments by a corporation for the president's services require withholding and W–2's, as with all wages. Other questions on the form asked for information regarding salaried employment and employment other than self-employment, as well as whether defendant was employed in any manner. However, defendant was not indicted for giving false answers to those questions. The indictment here simply failed to charge the making of false answers to the questions which were falsely answered but instead charged the making of false answers to the questions where the answers were not false.

The government relies on the dictionary definition of self-employed as "making a living working for oneself rather than others." Webster II New Riverside Dictionary (1988). However, where one works for a corporation, he or she works for another, namely the corporation, a distinct legal entity which must file its own separate reports to the state of incorporation and its own income tax. The corporate income tax returns of Woods and Water showed substantial receipts. There was no evidence here that the corporation was not in good standing or the corporate structure otherwise ignored so that the jury could pierce the corporate veil. *Cf. United States v. Diogo*, 320 F.2d 898, 907 (2d Cir. 1963) (In a prosecution for perjury with respect to whether an immigrant was married to an American citizen jury could con-

---

4. The case is complicated by the fact that answers to the questions regarding salaried employment or employment other than self-employment were answered falsely. The instruc-

tions, although indicating at some point that it is the self-employment statements which the government alleges were false, are not always so restricted.

sider whether the ceremonial marriage was legally valid. Jury not entitled to determine whether marriage had been entered into for purpose of immigration laws without any intent to cohabit and, therefore, statement regarding marriage was not false). The government also relies on *Morgan v. Finch*, 423 F.2d 551, 553 (6th Cir. 1970), a social security benefits case. The wage earner, an insurance salesman, continued to work while receiving social security benefits. He reported his commissions from policies sold during the year but not on renewal commissions for policies. If he were self-employed, these commissions were required to be included under a prior administrative ruling. If he were an employee, renewal premiums would be considered as earned the year the policy was sold. The court held that whether claimant was an employee or self-employed was a question of fact to be reviewed on a substantial evidence basis. The case does not involve the officer of a corporation. We are unable to find any evidence here that defendant, as opposed to the corporation, received any commissions. It is impossible to tell from the *Morgan* opinion just what evidence there was that Morgan was an employee.

Our holding is in accord with this Court's decision in *Gahagan*, 881 F.2d 1380 (insufficient evidence of falsity where defendant failed to report ownership of a Jaguar automobile where the title had been transferred to a friend). Gahagan's representation that his assets did not include the Jaguar was *on its face* not a false representation. The Eighth Circuit reached an analogous conclusion when it reversed a section 1001 false statement conviction in *United States v. Vesaas*, 586 F.2d 101 (8th Cir.1978). *Gahagan*, 881 F.2d at 1383. In that case, the defendant was convicted for falsely reporting that he had no knowledge of property owned by his deceased mother

and himself in joint tenancy. The Eighth Circuit held that defendant's denial of such ownership "cannot constitute a false statement since it is legally impossible to be a joint tenant with a decedent." *Id.* (quoting *Vesaas*, 586 F.2d at 103).

> [A] prosecution for a false statement under § 1001 ... cannot be based on an ambiguous question where the response *may* be literally and factually correct.... An indictment premised on a statement which on its face is not false cannot survive.

*Id.* (emphasis in the original); *see also Diogo*, 320 F.2d at 907 ("it is incumbent upon the Government to negative any reasonable interpretation that would make the defendant's statement factually correct"). Here, Hixon's representation that he was not self-employed was, on its face, not a false representation.

The indictment further charges the defendant with "concealing his self-employment and ownership of Woods and Water Outdoor Consultants, Inc." A violation of section 1001 for concealment requires "knowing and willful concealment 'by any trick, scheme, or device' of a material fact." *Gahagan*, 881 F.2d at 1382 (quoting *Diogo*, 320 F.2d at 902). With regard to concealment, therefore, we must determine whether Hixon's self-employment was a "fact" the concealment of which was sufficient to sustain the conviction. *Gahagan*, 881 F.2d at 1382. Because we have already determined that Hixon was an employee of Woods and Water and therefore not self-employed, Hixon could not be guilty of concealing his self-employment. Nowhere was he asked if he was the owner of any corporation.[5]

## V.

In summary, we determine that defendant's conviction must be reversed because

---

5. Similarly, Hixon cannot be convicted for concealing his ownership of Woods and Water. All of Hixon's allegedly fraudulent answers pertained to questions about his employment activity. Nowhere was Hixon asked about any corporate ownership. It was Hixon's status as a corporate officer that made him a corporate employee, not his status as a corporate owner.

The questions asking Hixon whether he was employed, self-employed or unemployed, did not require him to reveal his corporate ownership. Consequently, while Hixon might have been guilty of concealing his position as a corporate officer, he was only indicted for concealing his corporate ownership.

there is no evidence from which the jury could find beyond a reasonable doubt that Hixon knowingly misrepresented that he was self-employed during the period in which he was receiving disability compensation. Therefore, we find it unnecessary to address the remaining issues.

Accordingly, we **REVERSE** Hixon's conviction for violating 18 U.S.C. § 1001.

BATCHELDER, Circuit Judge, concurring.

I concur in this case, but I write separately because my analysis of the issue in regard to the motion for acquittal differs from that of the majority.

The majority has accurately set forth what the indictment did and did not charge in this case, and what the evidence did and did not demonstrate. It is undisputed that the defendant was an officer of his corporation, Woods and Water. It is undisputed that the law applicable to this defendant's employment status is Georgia law, and that under Georgia law an officer of a corporation is an employee of that corporation. Accordingly, it seems to me that because this defendant was an employee of the corporation, he was not, as a matter of law, self-employed. Thus his statement that he was not self-employed was not, as a matter of law, false, and therefore he was entitled to a judgment of acquittal unless the evidence permitted a finding that the corporate veil could be pierced. Here, as the majority opinion makes clear, the government simply did not present any evidence that the defendant had done any of the things with regard to the corporation which would permit such a finding. Because the actual falsity of the statement is an element of the offense, a failure of proof on that issue is fatal to a conviction. Therefore, since the evidence presented did not warrant an instruction to the jury on piercing the corporate veil, even if the instruction which the district court gave the jury had been adequate to explain what the jury must consider in determining whether to disregard the existence of the corporation, the district court erred in sending this matter to the jury at all.

It is clear that this defendant intended to make and indeed, did make a false statement to the government. However, he was not indicted for the false statement which he actually made, but for the statement which could only have been false if the government adequately established the identity between the defendant and his corporation. This the government did not do.